**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **In re:** | ) | **Involuntary - Chapter 11** |
| | ) | |
| **R. S. BACON VENEER COMPANY,** | ) | **Case No. 14-41737** |
| | ) | |
| **Debtor.** | ) | |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on Wednesday, November 19, 2014 at 4:00 p.m. or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable Donald R. Cassling, or any other judge who may be sitting in his stead, in Courtroom 619 in the Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, and then and there present the EMERGENCY MOTION OF PPL GROUP LLC, SECURED LENDER TO ALLEGED DEBTOR, FOR ENTRY OF ORDER DISMISSING BANKRUPTCY CASE PURSUANT TO 11 U.S.C. §§ 503(a) AND 105(a), OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY, a copy of which is served upon you herewith.

Dated: November 19, 2014

**BRYAN CAVE LLP**

By: /s/ *Ryan O. Lawlor*
Eric S. Prezant (6239611)
Ryan O. Lawlor (6288339)
Bryan Cave LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Tel: (312) 602-5000 (telephone)
Fax: (312) 602-5050 (facsimile)
eric.prezant@bryancave.com
ryan.lawlor@bryancave.com

ATTORNEYS FOR PPL GROUP LLC

290650.1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: ) | Involuntary - Chapter 11 |
| ) | |
| R. S. BACON VENEER COMPANY, ) | Case No. 14-41737 |
| ) | |
| Debtor. ) | |

**EMERGENCY MOTION OF PPL GROUP LLC, SECURED LENDER TO ALLEGED DEBTOR, FOR ENTRY OF ORDER DISMISSING BANKRUPTCY CASE PURSUANT TO 11 U.S.C. §§ 305(a) AND 105(a), OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY**

PPL Group LLC, successor in interest to Fifth Third Bank ("Lender"), by its undersigned counsel, hereby moves this Court, pursuant to §§ 305(a) and 105(a) of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"), for entry of an order dismissing the involuntary chapter 11 bankruptcy petition filed against R. S. Bacon Veneer Company (the "Debtor"). Alternatively, Lender seeks relief from the automatic stay pursuant to §§ 362(d)(1) and (d)(2) of the Bankruptcy Code to avoid serious and irreparable harm that will result to the value of its interest in the Debtor's assets from cancellation of its Article 9 sale scheduled to occur on November 19, 2014.[1] In further support of its Motion, Lender respectfully states as follows:

## INTRODUCTION

1. This is the second involuntary proceeding filed within 24 hours against the Debtor by counsel for the current petitioning creditors (the "Petitioning Creditors"). As this Court found earlier today, the first petition was insufficient as the petitioning creditor, Nelson Brothers Land

---

[1] Given the emergency nature of the Motion, Lender requests relief from compliance with LBR 4001-1 and any other applicable notice requirements applicable to a motion for relief from stay.

290551.4

& Timber ("Nelson Brothers"), was only one creditor where three are required by § 305(b)(1), and, in any event, was not the holder of a claim free and clear of a bona-fide dispute given the pending state court litigation in DuPage County. More importantly, the Court also found that even if Nelson Brothers was a proper petitioning creditor (without two other similarly situated unsecured creditors), cause existed under § 362 to grant Lender relief from the automatic stay so that the scheduled Article 9 sale could proceed. In an attempt to remedy his § 305(b)(1) problem, counsel has rounded up the Petitioning Creditors. What counsel cannot remedy, however, and what makes this second filing a tremendous waste of the parties and this Court's time and resources, is that the evaluation under § 362 is exactly the same. Cause still exists and relief should be granted from the automatic stay so that the sale can proceed.

2. Notwithstanding the foregoing, and what was not previously addressed before this Court in detail, is that pursuant to well-settled case law, abstention under § 305 is proper here because of the out-of-court arrangements already substantially under way – namely (i) an Assignment for the Benefit of Creditors commenced by the Debtor on October 30, 2014 (the "Assignment"), naming Howard B. Samuels of Rally Capital as assignee (the "Assignee") for the Debtor's assets and (ii) the impending joint public Article 9 sale by Lender and the Assignee of substantially all of the Debtor's assets.

3. And, again, to the extent this Court does not believe it would be appropriate to dismiss the case at this time, Lender seeks relief from the automatic stay pursuant to §§ 362(d)(1) and (d)(2) of the Bankruptcy Code so that the sale can continue as scheduled. As more fully described below, if the automatic stay remains in effect and the scheduled sale of the Debtor's assets cannot be consummated, significant value will be lost without hope of recuperation.

290551.4

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

5. The statutory predicates for the relief requested in this Motion are §§ 305(a) and 362(d)(1) and (d)(2) of the Bankruptcy Code.

## FACTUAL BACKGROUND

### A. This Chapter 7 Case

6. On November 19, 2014, the Petitioning Creditors filed an involuntary petition under Chapter 11 of the Bankruptcy Code (the "Involuntary Petition"). The Petitioning Creditors' counsel previously filed an involuntary petition against the Debtor that was rejected by this Court.

7. The Debtor is in the business of manufacturing and selling exotic wood veneer within the architectural and design community, with operating facilities and offices in Grundy Center, Iowa and the Chicagoland area.

### B. Lender's First Priority Lien On The Debtor's Assets

8. Pursuant to the following instruments (collectively, the "Loan Documents"), Lender has a first position lien on, and duly perfected security interest in, *inter alia*, substantially all of the Debtor's personal property assets as more fully described in Loan Documents:

   (a) Revolving Loan Note (2013) dated as of April 5, 2013, in the original principal amount of $8,000,000.00, attached hereto as Exhibit A;

   (b) Loan and Security Agreement dated as of May 21, 2011, with Fifth Third Bank, successor by merger with Old Kent Bank, as amended or modified from time to time, up to and including that certain Twelfth Amendment to Loan and Security Agreement dated as of April 5, 2013, attached hereto as Exhibit B;

   (c) Assignment of Note and Other Documents be and between Fifth Third Bank and Lender, pursuant to, and in furtherance of the arrangements provided for in, that certain Loan Purchase and Assumption Agreement

3

290551.4

        between Fifth Third Bank and Lender dated as of October 30, 2014, attached hereto as <u>Exhibit C</u>;

    (d)    Certain UCC-1 Financing Statements, attached hereto as <u>Exhibit D</u>; and

    (e)    Second Amended and Restated Forbearance Agreement dated as of October 30, 2013 by and among, *inter alia*, Lender and the Debtor, attached hereto as <u>Exhibit E</u>.

9.    As of October 30, 2014, the Debtor is indebted to Lender pursuant to the Loan Documents in an amount no less than $6,370,750.00, plus accrued and accruing interest, fees, costs and all other obligations allowable pursuant to the Loan Documents and applicable law. *See Forbearance Agreement,* Ex. F, Pg. 2, Recital H.

### C.    The Scheduled Joint Article 9 Sale and Assignment for the Benefit of Creditors

10.    Prior to the Petition Date, the Debtor was in default under the terms of the Loan Documents for, among other things, failure to (i) timely pay multiple monthly installments and other payments obligations, (ii) meet its required Debt Service Ratio and (iii) meet its minimum EBITDA from and after July 31, 2013, all as required by the Loan Documents. *See Forbearance Agreement,* Ex. F, Pg. 2, Recital E.

11.    Upon analyzing the circumstances and consulting with counsel, the Debtor determined that it did not have a reorganizable business or access to cash to continue operations. After reviewing its options, the Debtor determined in its business judgment that, in order to maximize the value of its assets for its creditors, it was in the best interest of its creditors to enter into the Assignment under Illinois law in order that a prompt sale of the business could occur to maintain a going concern value of the business operations and provide for a fair and equitable distribution of the sale proceeds.

12.    Accordingly, on October 30, 2014, the Debtor executed that certain Trust Agreement and Assignment for the Benefit of Creditors in favor of Assignee.

4

13. As an assignee, Mr. Samuels and Rally Capital are highly reputable in the insolvency community, and did not have any prior relationship with the Debtor or Lender. Mr. Samuels and the Rally Capital personnel have been involved in dozens of assignments presenting similar issues and concerns relating to the Debtor's business, creditors' rights and the sale process under Illinois common law.

14. After the commencement of the Assignment, notice of the Assignment was promptly sent to all creditors of the Debtor. A copy of the Notice of Assignment for the Benefit of Creditors is attached hereto as Exhibit F.

15. In addition, the Assignee immediately noticed for public sale substantially all personal property assets and certain real property interests of the Debtor. In connection therewith, Lender joined in the sale process, and pursuant to and in conformance with Article 9 of the Uniform Commercial Code (the "UCC"), as adopted by Illinois and other applicable law, pursued its remedies under the Loan Documents and the UCC to conduct a public auction, together with the Assignee, of substantially all of the Debtor's assets (the "Joint Article 9 Sale"). A copy of the Joint Notice of Public Sale is attached hereto as Exhibit G.

16. Shortly thereafter, on or about November 7, 2014, the Assignee and Lender, as sellers, entered into an Agreement for the Purchase and Sale of Assets (the "Stalking Horse Agreement") with The Best Veneer Company, LLC, as buyer, which Stalking Horse Agreement was subject to, among other things, the Assignee's and Lender's right to accept higher or otherwise better bids at the Joint Article 9 Sale scheduled for November 19, 2014 at 2:00 p.m.

17. The Assignee immediately undertook to advertising and marketing the Debtor's assets, and as a result of such efforts, the Assignee has been in contact with several potential bidders, including one bidder that has submitted a $250,000 good-faith deposit and is expected to engage in competitive bidding at the Joint Article 9 Sale.

290551.4

18. However, if the involuntary petition is allowed to continue, it is expected that the business operations of the Debtor will cease due to, among other reasons, a lack of available funds and the administrative burdens placed on it by the pending bankruptcy proceeding. Not only will that likely, if not definitely, result in the loss of potential bidders that were prepared to participate in the Joint Article 9 Sale, it will most definitely diminish the value of the Debtor's assets.

## ARGUMENT

### A. The Court Should Dismiss this Case in the Best Interests of the Debtor and Its Creditors.

19. This Court should dismiss the Debtor's case under the abstention provisions of § 305(a)(1) of the Bankruptcy Code. Section 305(a)(1) allows a court to dismiss a bankruptcy case if such dismissal is in the best interests of the debtor and its creditors. It provides in relevant part: "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time, if – (1) the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1).

20. In evaluating a motion to dismiss pursuant to § 305(a)(1), courts look to a multitude of factors, including:

(1) economy and efficiency of administration;
(2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;
(3) whether federal proceedings are necessary to reach a just and equitable solution;
(4) whether there is an alternative means of achieving an equitable distribution of assets;
(5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;
(6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time

> consuming to start afresh with the federal bankruptcy process and
>
> (7) the purpose for which bankruptcy jurisdiction is sought.

*In re 801 South Wells Street Limited Partnership*, 192 B.R. 718, 723 (Bankr. N.D. Ill. 1996). Still, many courts evaluate it under a different test where an involuntary proceeding is involved, and weigh more critically the (i) intention of the party(ies) petitioning the Court for the insolvency proceeding and (ii) the presence of a state insolvency proceeding or other out-of-court arrangement. *See Id.* (citing cases) (finding abstention proper when "(1) the petition was filed by a few recalcitrant creditors and most creditors oppose the bankruptcy; (2) there is a state insolvency proceeding or an out-of-court arrangement pending; and (3) dismissal is in the best interest of the debtor and all creditors."). In *In re Mineral Hill Corporation,* 16 B.R. 687 (Bankr. D. Md. 1982), the United States Bankruptcy Court for the District of Maryland stated, and has been cited often for the proposition that:

> "Dismissal or suspension would ordinarily be warranted under this section if another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court (e.g., assignment for benefit of creditors). Proper utilization of § 305 by the Bankruptcy Court is illustrated in 2 Collier on Bankruptcy ss 305.02 at 305-4 (15th ed. 1981) which provides that:
>
> "An example of a situation in which the court might choose to dismiss or suspend a case under section 305(a) would be where an arrangement is being worked out by creditors and the debtor out of court in which there is no prejudice to the rights of creditors and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment. The less expensive out-of-court settlement might better serve the interest under such circumstances." (footnote omitted)."

*In re Mineral Hill Corporation,* 16 B.R. 687, 688 (Bankr. D. Md. 1982); *see also In re Artists' Outlet, Inc.*, 25 B.R. 231, 233-234 (Bankr. D. Mass. 1982) (quoting *In re Pine Lake Village Apartment Co.,* 16 B.R. 750, 753 (Bankr. S.D. N.Y. 1982) ("Obviously, when the Debtor is involuntarily thrown into bankruptcy during a pending out of court arrangement, the debtor's

interests would be better served by allowing the debtor's choice of method to proceed; Code § 305 recognizes this approach.").

21. Regardless of the test applied, the facts of the present case make it clear that the Debtor and its creditors would benefit from dismissal under § 305 of the Bankruptcy Code.

22. First, judicial economy and efficiency counsels in favor of dismissal. This bankruptcy case only adds an additional and unnecessary layer of expenses and cost to both the Debtor and Lender, and delays Lender from liquidating its collateral. *See Artists' Outlet,* 25 B.R. at 233 ("In the instant case, were the bankruptcy court to retain jurisdiction over this case, the administrative expenses necessarily incurred in a case under Chapter 7 would deplete the already minimal assets of the estate. Thus, retention of the case would likely prejudice the rights of creditors, and defeat the clear purpose of § 305.") (citing cases).

23. Second, an alternative forum exists to protect the Debtor via the Debtor's state law rights. As set forth above, the Joint Article 9 Sale is scheduled for November 19, 2014 at 2:00 p.m., less than 3 hours after the Involuntary Petition was filed. The Joint Article 9 Sale has been properly advertised and has attracted not only a stalking horse bidder, but a third party bidder that has submitted a $250,000 deposit, and, upon information and belief, is ready and willing to submit one or more overbids at the Joint Article 9 Sale. The involuntary petition jeopardizes the sale process and the offers that Lender and the Assignee have been able to attract. It also jeopardizes the going concern value of the Debtor and the value that may be received for the Debtor's assets.

24. Third, an alternative means of achieving equitable distribution of assets exists through the vehicle of the Joint Article 9 Sale and the Assignment. The Debtor is already the subject of the Assignment, and the Assignee will be able to complete the orderly liquidation in a manner that is least expensive to creditors and provide an accounting. Moreover, a bankruptcy

8

trustee will not have more experience in the liquidation of assets that the Assignee, and will have to incur additional costs in getting up to speed and advertising and preparing for any subsequent sale – efforts already undertaken by the Assignee and Lender in connection with the Joint Article 9 Sale.

25.     Fourth, upon information and belief, the only reason the Petitioning Creditors commenced this bankruptcy was to gain a tactical advantage in settlement discussions or otherwise with the Debtor, Lender or a third party purchaser of the Debtor. Indeed, what now appears to be emerging as the motivation is the clear intention of certain of the Petitioning Creditors to frustrate a competitive bid process and force Lender to sell to it/him at a discount. The undeniable reality is that the filing of the Involuntary Petition likely means the Debtor ceases operations, loses its employees and increases priority claims as a result, as well as incurs significant administrative expense claims, all so the Debtor can be subject to a sale process similar to the one in place now but with no going concern value. The bankruptcy process makes no sense in light of the processes already in place to liquidate the Debtor's assets and wind down its operations through the Assignment and Joint Article 9 Sale. Accordingly, the case should be dismissed.

**B.     To the Extent the Court is Reluctant to Abstain, the Court Should Grant Lender Relief from the Automatic Stay to Continue with the Joint Article 9 Sale**

26.     Bankruptcy Code § 362(d)(1) provides that the Court may grant relief from the stay to a creditor for "cause, including the lack of adequate protection of an interest in property" of such creditor. "The decision whether to modify the stay for cause under § 362(d)(1) is committed to sound discretion of the bankruptcy judge." *In re Halas*, 192 B.R. 605, 615 (Bankr. N.D. Ill. 1996) (citing *In re G & S Grain*, 47 F.3d 233, 237 (7th Cir. 1995)).

9

290551.4

27.     If the automatic stay is not lifted, the Assignee's and Lender's Joint Article 9 Sale cannot be consummated as scheduled.  If this transaction do not occur, the net realizable value of the Debtor's assets will decline precipitously due to the accrual of operating expenses.  Such a decline would jeopardize estate value and, more specifically, would impair the value Lender and the Assignee would realize upon the currently scheduled auction of the Debtor's assets.  Cause therefore exists under § 362(d)(1), warranting relief from the automatic stay so that the Assignee and Lender can consummate the Joint Article 9 Sale.

28.     Additionally, § 362(d)(2) provides that the Court also may grant relief from the stay to a creditor if: (a) the debtor has no equity in the property with respect to which the creditor seeks such relief, and (b) such property is not necessary to an effective reorganization.

29.     Here, there is no dispute from the Debtor that the value of Lender's collateral exceeds what it is owed under the Loan Documents.  And, the collateral is not necessary to an effective reorganization.  The involuntary petition against the Debtor was filed under chapter 11 of the Bankruptcy Code, however, there is no basis to support a chapter 11 when all of the testimony at the prior hearing clearly identified this case as proper under chapter 7.  The Debtor will be out of funds by the end of the week, and Lender has no obligation to and has not committed to advance any funds.  As such, this is appropriately a chapter 7, despite the Petitioning Creditors self-serving attempt to classify it otherwise.  Under Chapter 7, a secured creditor must only demonstrate that there is no equity in its collateral for it to be entitled to relief from the automatic stay.  *See In re Booth*, 289 B.R. 665, 667 (Bankr. N.D. Ill. 2003) (where there is no equity in collateral, relief from the stay must be granted in a chapter 7 case).

30.     More importantly, however, it is abundantly clear that no reorganization will take place in this case.  Even under a Chapter 11, the Debtor (nor the Petitioning Creditors) can establish any likelihood of a reorganization.  As stated above, the Debtor entered into the

10

Assignment because it had determined to wind down its business operations and liquidate its assets. The Debtor, the Assignee and Lender have expended a great deal of time and resources in an effort to effectuate this liquidation. For all of these reasons, relief from the automatic stay should be granted under § 362(d)(2) so that the Assignee and Lender can consummate the Joint Article 9 Sale.

## CONCLUSION

31.     For each of the reasons articulated herein, the Court should dismiss the Debtor's bankruptcy case pursuant to 11 U.S.C. § 305(a). Alternatively, and while not the preferred relief requested, relief should be granted from the automatic stay pursuant to § 362(d)(1) and/or d(2) so that the Assignee and Lender can consummate the Joint Article 9 Sale.

WHEREFORE, Lender requests that this Court enter an order (a) dismissing the Debtor's bankruptcy case, and (b) granting such other and further relief as the Court may deem just, equitable and proper.

Dated: November 19, 2014

                                          Respectfully submitted by

                                          **BRYAN CAVE LLP**

                                          By:   /s/ *Ryan O. Lawlor*
                                                  Eric S. Prezant (6239611)
                                                  Ryan O. Lawlor (6288339)
                                                  Bryan Cave LLP
                                                  161 North Clark Street, Suite 4300
                                                  Chicago, Illinois 60601
                                                  Tel:  (312) 602-5000 (telephone)
                                                  Fax:  (312) 602-5050 (facsimile)
                                                  eric.prezant@bryancave.com
                                                  ryan.lawlor@bryancave.com

                                          ATTORNEYS FOR PPL GROUP LLC

290551.4

## **CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a true and correct copy of the foregoing **EMERGENCY MOTION OF PPL GROUP LLC, SECURED LENDER TO ALLEGED DEBTOR, FOR ENTRY OF ORDER DISMISSING BANKRUPTCY CASE PURSUANT TO 11 U.S.C. §§ 305(a) AND 105(a), OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY** was sent via the Court's electronic noticing system to all parties receiving electronic notices in this case.

                                                        /s/ *Ryan O. Lawlor*

290551.4